FARBER ELECTRIC AND PLUMBING CO., INC., Plaintiff, Appellee, and Appellant, *v.* PROFESSIONAL REALTY CORPORATION, Defendant, Appellant, and Appellee.

No. 12600. Decided May 21, 1962.

*Celestino Iriarte* and *F. Fernández Cuyar* for appellant and appellee. *Víctor A. Coll* for appellee and appellant.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau and Mr. Justice Dávila.

PER CURIAM.

Farber Electric and Plumbing Co., Inc., hereinafter called Farber, contracted with Professional Realty Corporation, hereinafter called Professional, for the electric installation of a building which the latter was constructing. Upon completion of the work Farber sued Professional for recovery of a certain amount of money owed to it on account of such work. Professional counterclaimed.

The parties stipulated to submit the question to a special master, pursuant to the provisions of Rule 53 of the Rules of Civil Procedure of 1943 (Rule 41 of the Rules of 1958), for determination "of the amount actually spent in materials and labor." Master Waymouth submitted a report from which it appears that Professional owed Farber the sum of $45,167.07. We copy from the report what Waymouth entitled "Summary":

### "SUMMARY

"From the data shown in this report it appears that the total cost of the electric contract of 'Professional Building' was $188,514.86, as follows:

| | Total Cost | Adjusted Original Contract | "Extra" Work |
|---|---|---|---|
| Materials | $85,745.94 | $17,373.85 | $68,372.09 |
| Labor | 31,073.54 | 4,343.46 | 26,730.08 |
| Price Increases | 7,225.21 | 7,225.21 | – – – |
| Addition of 15% and 10% to the materials | 18,118.60 | – – – | 18,118.60 |

| Supervision and overhead | 35, 762. 21 | 8, 072. 32 | 27, 689. 89 |
|---|---|---|---|
| Profit | 10, 589. 36 | 10, 589. 36 | — — — |
| Totals | $188, 514. 86 | $47, 604. 20 | $140, 910. 66 |

"I have already mentioned that Professional Realty Corporation disbursed, in connection with the contract under consideration, the sum of $143,347.79, so that, on the basis of the data contained in this report, it would owe the sum of $45,167.07, in order to arrive at the total cost of $188,514.86.

"I have not included any profits from the 'extra' work other than the profit in the materials, amounting to $18,118.60. Apparently, the plaintiff used very little capital of its own in the electric contract under consideration.

"Before closing, I wish to say to Your Honor that in those computations on which the evidence offered was not complete I attempted to make the computations on the most reasonable bases, in my judgment, for both parties."

In rendering judgment sustaining the complaint and dismissing the counterclaim, the trial judge stated that:

"By order of July 15, 1955, the court approved the report of Special Master Sparrow, Waymouth & Co. as respects the exact amounts disbursed by the parties in the performance of the contract, which report is hereby made an integral part of our Findings of Fact.

"We conclude from the evidence before us that upon final completion of the work there had been spent the sum of $188,514.86, and that Professional Realty Corporation had disbursed $143,347.79 (see p. 2 of the report of Sparrow, Waymouth & Co.), leaving a difference or balance of $45,167.07 in order to arrive at its total cost."

Professional appealed to this Court from the judgment ordering it to pay to Farber $45,167.07 and interest thereon, plus $3,000 for attorney's fees.

The issue in this case stems from the changes made in the work at Professional's request, as originally agreed upon. The question for decision is the manner in which

such additional work should be liquidated. Professional maintains that the manner in which it was liquidated would compel it to pay twice for the same account. In support of its contention it alleges that the provisions of clause 8 of the contract provide a method for liquidating the extra work, and that that was the method which should have been used in determining the value of such work. In incorporating in its judgment the full report of Master Waymouth, the trial court actually compensated the extra work on the basis of the provisions of clause 8 of the contract and also of clause 15 of the "General Conditions." The contract signed between the parties incorporated in its provisions what is known as "The General Conditions of the Contract for the Construction of Buildings of American Institute of Architects," but it was provided that in the case of conflict between the contract itself and the "General Conditions" incorporated therein the former would prevail.

Professional maintains that it is ordered to pay twice for the same account because clauses 8 and 15 are incompatible, and that according to the contract clause No. 8 should prevail.

Clause 8 provides as follows: [1]

"Where materials or equipment are changed with a resulting increase in the cost the amount of the change for materials alone shall be calculated on the difference in what would have been the June 14 cost to the Contractor for the materials and/or equipment eliminated, and the actual cost at the time of delivery of the materials and/or equipment substituted plus 15% and 10%. If the substituted materials cost less the decrease in the contract price for the materials alone shall be the actual difference in cost as stated above."

Article 15 of the General Conditions reads as follows: [2]

"The Owner, without invalidating the Contract, may order extra work or make changes by altering, adding to or deducting

---

[1] The English text of clause 8 is copied verbatim from the contract.

[2] The English text of art. 15 of the General Conditions is copied verbatim from the contract.

from the work, the Contract Sum being adjusted accordingly. All such work shall be executed under the conditions of the original contract except that any claim for extension of time caused thereby shall be adjusted at the time of ordering such change.

"In giving instructions, the Architect shall have authority to make minor changes in the work, not involving extra cost, and not inconsistent with the purposes of the building, but otherwise, except in an emergency endangering life or property, no extra work or change shall be made unless in pursuance of a written order from the Owner signed or countersigned by the Architect, or a written order from the Architect stating that the Owner has authorized the extra work or change, and no claim for an addition to the contract sum shall be valid unless so ordered.

"The value of any such extra work or change shall be determined in one or more of the following ways:

(a) By estimate and acceptance in a lump sum.

(b) By unit prices named in the contract or subsequently agreed upon.

(c) By cost and percentage or by cost and a fixed fee.

"If none of the above methods is agreed upon, the Contractor, provided he receives an order as above, shall proceed with the work. In such case and also under case (c), he shall keep and present in such form as the Architect may direct, a correct account of the cost, together with vouchers. In any case, the Architect shall certify to the amount, including reasonable allowance for overhead and profit, due to the Contractor. Pending final determination of value, payments on account of changes shall be made on the Architect's certificate.

"    .    .    .    .    .    .    .    ."

The trial judge held that since the aforesaid two provisions are not incompatible, both should be applied in determining the value of the additional work performed by Farber at Professional's request.

Are the two provisions incompatible? Clause 8 provides that if as a result of the extra work it is necessary to use additional material or equipment, the cost of the change as respects the materials only shall be calculated on the differ-

ence in what would have been the cost of the material and equipment eliminated on June 14, 1946; and the cost of the new material at the time of delivery, plus 15 per cent and 10 per cent.

Article 15 of the General Conditions deals more in detail with the method of liquidating the extra work. It provides three methods for determining the value of the additional work:

(a) By estimate and acceptance in a lump sum.
(b) By unit prices named in the contract or subsequently agreed upon.
(c) By cost and percentage or by cost and a fixed fee.

It then provides that if none of these three methods is agreed upon, the contractor shall proceed with the work provided he receives an order to that effect. In that case, and also in the case provided in subd. (c), the contractor shall keep and present in such form as the architect may direct the correct cost of the materials together with the vouchers. In any case, the architect shall certify to the amount, including a reasonable allowance for overhead and profit, due to the contractor.

Thus, we see that these two provisions are not actually incompatible. On the contrary, they complement each other.

By clause 8 of the contract the parties expressly agreed on a method for determining the increase in the cost of materials or equipment in the case of changes or extra work. This method agrees with the alternative referred to in subd. (c) of art. 15 of the General Conditions. Hence, there is no incompatibility. Having established the foregoing, the appellant's contention falls by the wayside. The master's report which the trial court made an integral part of the findings of fact sets out the sum due, corresponding to the money disbursed for materials as a result of the changes, which sum was computed according to the method provided in clause 8 and referred to in subd. (c) of art. 15. To that sum he

added an item for the overhead expenses authorized by art. 15 in providing that "in any case, the architect shall certify to the amount, including reasonable allowance for overhead and profit, due to the contractor."

■■ On the other hand, and in connection with the changes made in the work, Professional maintains that the trial court erred in failing to make a specific finding of fact as to what was the cost on June 14, 1946 of the materials eliminated, and what was the cost on the date of delivery of the materials furnished in substitution of the former, and thus be in a position to apply to the difference in cost the method provided in clause 8 of the contract and in subd. (c) of art. 15 of the General Conditions. It was not necessary for the court to make such finding of fact. The court approved the master's report showing an item of $18,118.60 representing the "addition of 15 per cent and 10 per cent to the materials." And that item was in turn the result of a simple mathematical calculation made by the master in connection with the aforesaid difference between the materials and equipment eliminated and the new materials and equipment furnished. The averment that the trial court was bound to make its own special findings on the different details of cost on which the master's report was based, is therefore without merit. Notwithstanding the fact that the parties stipulated that the only matter referred to the master was the determination of the total amount spent by the parties in the execution of the contract, and the fact that the master actually made other findings which the trial judge made an integral part of his findings of fact, it should be understood that the trial court was necessarily approving also the bases used by Waymouth for rendering the report, and that the court was not bound to duplicate in its findings of fact the contents and the necessary implications of the master's report. And we must bear in mind that what the master did

was to apply the method provided in art. 8 of the contract, which is the same as that in subd. (c) of art. 15, plus a reasonable sum for overhead expenses and profits.

The errors assigned were not committed, wherefore the judgment appealed from will be affirmed in its entirety.

